# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

_____

|  |  |  |
|---|---|---|
| MUSCOGEE (CREEK) NATION DIVISION OF HOUSING, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 10-cv-193 JHP |
| UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT, SHAUN DONOVAN, in his official capacity, SANDRA HENRIQUEZ, in her official capacity, and C. WAYNE SIMS, in his official capacity, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

_____

## ORDER

Now before the Court is Defendants' Motion to Dismiss, Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (Dkt.# 25), and Defendants' Reply (Dkt.# 29). On May 25, 2010, the Muscogee (Creek) Nation Division of Housing filed the instant case against the United States Department of Housing and Urban Development ("HUD") pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706. Plaintiff challenges 24 C.F.R. § 1000.58(g), which limits investment of grant money awarded under the Native American and Housing and Self Determination Act ("NAHASDA"), 25 U.S.C. § 4101, *et seq.,* to a period of no longer than two years. Plaintiff also challenges Notice PIH 2009-6, section 7(c), which requires investment income accrued after grant funds are held in investment accounts beyond the two year limitation period to be returned to the government.

Plaintiff contends "Congress provided no authority in NAHASDA for HUD to place this two-year restriction on an Indian tribe's investment activity." *Complaint,* ¶ 16. Plaintiff also alleges that 24 C.F.R. § 1000.58(g) and Notice PIH 2009-6, section 7(c), are in conflict with: (1) section 203 of NAHASDA, which provides that "'[a]ny amount of a grant provided to an Indian tribe . . . for a fiscal year that is not used by the Indian tribe during that fiscal year may be used by the Indian tribe during any subsequent year.'" *Id.* (quoting 25 U.S.C. § 4133(f)(2)); (2) section 104 of NAHASDA, which permits a recipient of grant amounts to "retain any program income that is realized from any grant amounts if the income was earned after the grant was disbursed and the recipient agrees to utilize such income for housing related activities." *Complaint,* ¶ 17 (quoting 25 U.S.C. § 4114(a)); and (3) a statement by the negotiated rule making committee in the initial agency review of 24 C.F.R. § 1000.62, which "agreed with 'the right of the [block grant] recipients to keep all interest earned on grant amounts." *Complaint,* ¶ 18 (quoting 63 Fed. Reg. 12333, 12338 (Mar. 12, 1998)).

Plaintiff seeks a declaration that 24 C.F.R. §1000.58(g) and Notice PIH 2009-6, section 7(c) are illegal and *ultra vires* under NAHASDA, *Complaint,* ¶¶ 10-18; an injunction prohibiting HUD from requiring Plaintiff to repay any additional investment income, *Id.* ¶¶ 19-22; and recoupment of $1,316,425 of investment income that Plaintiff paid to HUD based on HUD's enforcement of 24 C.F.R. § 1000.58(g) and Notice PIH 2009-6, *id.* ¶¶ 23-25.

Defendants assert this Court lacks jurisdiction over Plaintiff's challenge to 24 C.F.R. § 1000.58(g) and Notice PIH 2009-6, section 7(c), because Congress has not waived its sovereign immunity. Further, Defendants assert that if judicial review is

available, Plaintiff's challenge to 24 C.F.R. § 1000.58(g) and Notice PIH 2009-6, section 7(c), is without merit and fails to state a claim on which relief can be granted.


## Statutory and Regulatory Framework

In 1996, Congress enacted NAHASDA, which established a housing-assistance program through annual block grants to tribes, or tribally designated housing entities such as Plaintiff, "to carry out affordable housing activities." 25 U.S.C. § 4111. Congress recognized "the need for affordable homes in safe and healthy environments on Indian reservations, in Indian communities, and in Native Alaskan villages is acute." *Id*. § 4101. The Secretary of HUD is authorized to promulgate regulations implementing NAHASDA. *Id.* §§ 4102, 4116.

Block grant funds provided by NAHASDA are allocated among all eligible Indian tribes. *Id*. §§4151, 4152. NAHASDA permits a grant recipient to draw allocated grant funds from the Federal Treasury to spend directly on affordable housing activities which include "maintenance, modernization, or operation of housing previously developed; acquiring or developing new housing; providing housing-related services such as property management or security services for affordable housing; providing rental and homeownership assistance in the form of equity investments, loans, and interest subsidies; and to spend directly on administrative planning and costs." *Id.*, §§ 4111(h), 4132, 4134(a).

A grant recipient may also receive grant funds before the funds are needed for expenditure on the activities described above. In 2008, Congress amended NAHASDA

to add section 202(9), which permits an Indian tribe to receive funds to deposit in a "reserve account established for an Indian tribe only for the purpose of accumulating amounts for administration and planning relating to affordable housing activities." *Id., §* 4132(9). The reserve account "shall consist of not more than an amount equal to 1/4 of the 5-year average of the annual amount used by a recipient for administration and planning relating to affordable housing activities." *Id.*

Grant recipients are also allowed to create investment accounts "for the purposes of carrying out affordable housing activities, as approved by the Secretary." *Id.,* § 4134(b). This provision was implemented pursuant to a negotiated rule making procedure. 24 C.F.R. § 1000.58. The regulation provides that "[i]nvestments under this section may be for a period of no longer than two years." *Id.* § 1000.58(g). HUD's Notice PIH 2009-6, section 7(c), provides that interest accrued after the expiration of the approved investment period must be returned to HUD because the regulation restricts the investment period. *Complaint*, Ex. 1.

A grant recipient may carry over any unused funds for use in a subsequent fiscal year. Section 203(f) of NAHASDA provides:

> Use of grant amounts over extended periods.
> (1) In general. To the extent that an Indian housing plan for an Indian tribe provides for the use of amounts of a grant . . . for a period of more than 1 fiscal year, or for affordable housing activities for which the amounts will be committed for use or expended during a subsequent fiscal year, the Secretary shall not require those amounts to be used or committed for use at any time earlier than otherwise provided for in the Indian housing plan.
> (2) Carryover. Any amount of a grant provided to an Indian tribe . . . for a fiscal year that is not used by the Indian tribe during that fiscal year may be used by the Indian tribe during any subsequent fiscal year.

25 U.S.C. § 4133(f).[1]  Carried over grant funds remain in the Treasury until requested for an eligible program use.  *See* 24 C.F.R. §§ 1000.26(a), 85.20(b)(7), 85.21.

A recipient of grant amounts is entitled to "retain any program income that is realized from any grant amounts" provided that "such income was realized after the initial disbursement of the grant amounts received by the recipient;" and the "recipient has agreed that it will utilize such income for housing related activities."  25 U.S.C. § 4114.  The regulations define "program income" as "any income that is realized from the disbursement of grant amounts."  24 C.F.R. § 1000.62(a).

## Discussion

**I.    PLAINTIFF HAS FAILED TO ESTABLISH A WAIVER OF SOVEREIGN IMMUNITY**

Defendants assert the Court lacks jurisdiction over Plaintiff's challenge to 24 C.F.R. § 1000.58(g) and Notice PIH 2009-6, section 7(c), because Congress has not waived Defendants' sovereign immunity.  Defendants agree the APA provides a limited waiver of the United States' sovereign immunity, however Defendants contend the waiver has no application in this instance because Plaintiff is challenging "agency action [] committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  Defendants assert Congress has granted the Secretary of HUD broad discretion to approve investments of NAHASDA grant funds.  *See*, 204(b) of NAHASDA; 25 U.S.C. § 4134(b).  Therefore, according to Defendants, Plaintiff's challenge to HUD's exercise of that discretion is excluded from the APA's waiver of sovereign immunity.  *See* 5 U.S.C. § 701(a)(2).

---

[1]

 This carry over provision was added in the 2008 amendments to NAHASDA.  Pub. L. 110-411, § 203.  However, as noted in the legislative history of this amendment, the provision merely codified current practice.  *See* H. Rept. 110-295, 6 (Aug. 3, 2007) ("In practice [carryover] already happens.").

Plaintiff contends the United States' sovereign immunity has been waived with respect to its claims. Specifically, Plaintiff asserts the "committed to agency discretion" exception to the APA's waiver of sovereign immunity is inapplicable because this case does not involve an area traditionally reserved to the Government's full discretion. Plaintiff further contends the *Ex Parte Young* doctrine provides another procedural basis for overcoming sovereign immunity. *Plaintiff's Response at 2.*

The Court finds sovereign immunity is not waived because section 204(b) of NAHASDA, 25 U.S.C. § 4134(b), grants HUD broad discretion to set parameters regarding the investment of grant funds and there is no law for the Court to apply to evaluate the validity of the challenged investment restrictions. The Court further finds that Plaintiff cannot rely on *Ex Parte Young,* 209 U.S. 123 (1908), to establish sovereign immunity has been waived for Plaintiff's claims. Accordingly, the Court concludes that dismissal of Plaintiff's Complaint is appropriate pursuant to FED. R. CIV. P. 12(b)(1).

A.    The APA does Not Waive Sovereign Immunity for Plaintiff's Claims

A plaintiff must identify a waiver of the United States' sovereign immunity to maintain a suit against the United States. A waiver of the government's sovereign immunity must be unequivocally expressed in the statutory text, *Lane v. Pena,* 518 U.S. 187, 192 (1996) (citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33-34, 37 (1992), and will not be implied, *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)). "Moreover, a waiver of the government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* (citing *United States v. Williams*, 514 U.S. 527, 531 (1995), *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986), and *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981)).

The APA waives sovereign immunity to allow any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute" to obtain "judicial review thereof." 5 U.S.C. § 702. However, the APA precludes judicial review when the "agency action is committed to agency discretion by law." *Id.* § 701(a)(2). An action is committed to agency discretion when "no judicially manageable standards are available for judging how and when an agency should exercise its discretion. . . ." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). As the Supreme Court explained,

> even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely. This construction avoids conflict with the "abuse of discretion" standard of review in § 706–if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion."

*Id.* The APA's exception to judicial review, although narrow, applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (citing S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)).

Consistent with *Heckler,* the Tenth Circuit has found agency action unreviewable under section 701(a)(2) in analogous cases where it found the language in the controlling statute does not limit the agency's discretion. *See Selman v USA,* 941 F.2d 1060 (10th Cir. 1991); *American Bank, N.A, v. Clarke,* 933 F.2d 899 (10th Cir. 1991) (no judicial review under the APA where statutory language is "highly discretionary" because "[s]uch permissive language exudes strong deference to the Comptroller's decision"); *Cmty. Action of Laramie Cty., Inc. v. Bowen,* 866 F.2d 347 (10th Cir. 1989);

*see also Lower Ark. Valley Water Conservancy Dist. v. United States,* 678 F. Supp. 2d 1315 (D. Colo. 2008). In *Selman,* the Tenth Circuit found agency action under 26 U.S.C. (I.R.C.) §6404(e)(1) (1988), which provides, in relevant part, the "Secretary may abate the assessment of all or any part of such interest for any period," 26 U.S.C. § 6404(e)(1), to be unreviewable under the APA. *Selman,* 941 F.2d at 1062. The Court found the "language of the statute fails to provide a court with any substantive standards by which to review the agency's action" and that "Congressional intent to preclude judicial review is 'fairly discernable in the statutory scheme' of I.R.C. § 6404(e)." *Selman,* 941 F.2d at 1063-64. The Court reasoned:

> First, the plain language of section 6404(e)(1) suggests that the Secretary's determination is not subject to judicial review. The statute clearly speaks in permissive, not mandatory, language; 'the Secretary *may* abate.' I.R.C. § 6404(e)(1) (emphasis added).

> Second, section 6404(e), read in its entirety, demonstrates that Congress carefully distinguished between discretionary and mandatory authority to abate interest. In contrast to subsection (e)(1)'s permissive language, in subsection (e)(2), Congress directed that the 'Secretary *shall* abate the assessment of all interest on any erroneous refund under 6602 until the date demand for repayment is made. I.R.C. § 6404(e)(2) (emphasis added)).

*Id.*

In the instant case, the Court finds Section 204(b) of NAHASDA, which provides that a "recipient *may* invest grant amounts for purposes of carrying out affordable housing activities in investment securities and other obligations *as approved by* the Secretary," 25 U.S.C. § 4134(b) (emphasis added), provides "no judicially manageable standards [] for judging how and when an agency should exercise its discretion. . . ." *Heckler*, 470 U.S. at 830. Section 204(b) "neither indicates" how the Secretary shall use his approval authority "nor provides any basis for distinguishing between the

instances in which investments should and should not be approved."  It sets forth no factors the Secretary must consider, or abide by, in determining whether to approve an investment.  *Selman,* 941 F.2d at 1063.  Section 204(b) of NAHASDA "exudes strong deference" to the Secretary's decision, and it includes no standard for a court to apply to determine whether the limitations the Secretary imposes are valid.  *Clarke,* 933 F.2d at 903.

Further, the Court finds Plaintiff's assertions in support of a waiver of sovereign immunity are without merit.  *Heckler,* 470 U.S. at 830, does not restrict application of Section 701(a)(2) to cases involving "areas traditionally reserved to the Government's full discretion."  *Response at 2.*  The Court finds APA section 701(a)(2) applies in this case because NAHASDA section 204(b) is drawn in such broad terms that there is no law to apply, not because this case involves an area traditionally reserved to HUD's discretion.

Further, none of the six bases identified by Plaintiff support its assertion there "clearly is law for this Court to apply." *Opposition,* p. 3.  Plaintiff cites several NAHASDA provisions and a statement in the Senate Report accompanying the enactment of amendments to NAHASDA in 2008.  None of these citations are relevant to investment of grant funds and rights to unauthorized investment income; and none provides judicial manageable standards to guide the Court in evaluating the legality of 24 C.F.R. § 1000.58(g), and PIH Notice 2009-6, section 7(c).

First, Section 2(7) of NAHASDA, 25 U.S.C. § 4101(7), provides no relevant standards because it has nothing to do with the Secretary's discretion to approve investments.  Rather, section 2(7), which is a congressional finding that grants should

be made directly to tribes in recognition of the right of Indian self-determination, simply addresses to whom grants should be disbursed.

Second, section 104(a)(2) of NAHASDA, 25 U.S.C. § 4114(a)(2), provides no relevant standards because it addresses the Secretary's authority to restrict access to or reduce *grant* amounts.  There is no dispute that the challenged regulation and notice have no effect on Plaintiff's grant amount, or access to grant amounts for eligible affordable housing activities.

Third, section 204(a) of NAHASDA, 25 U.S.C. § 4134(a)(1), which grants tribes discretion to determine whether to spend funds on "form[s] of [housing] assistance" such as equity investments (e.g., down-payment assistance to low-income homebuyers), does not affect the Secretary's discretion to restrict investments under section 204(b).  Section 204(a) grants tribes discretion to select between competing housing assistance programs on which to spend grant money.  By contrast, funds invested under section 204(b) are placed in proprietary securities accounts; they are not funds spent on affordable housing activities.  Accordingly, HUD's broad discretion to determine eligible investments for income production under section 204(b) does not conflict with tribes' right to select a housing assistance program.

Fourth, the legislative history of the 2008 amendments does not guide the Court in evaluating the Secretary's exercise of his discretion under section 204(b).  While Congress viewed some aspects of NAHASDA to be "unnecessary statutory and regulatory burdens" that prohibit tribes from "maximiz[ing] the benefits of the program," S. Rep. No. 110-238, at 1 (2007), it left untouched the existing statutory and regulatory scheme of section 204(b) related to investments.  This indicates Congress did not view

the challenged limitations on a tribe's investment activity to be an unnecessary burden, making the legislative history cited by Plaintiff irrelevant. *See Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 846 (1986).

Fifth, section 401 of NAHASDA, 25 U.S.C. § 4161(a), is not an exclusive list of remedies for noncompliance with NAHASDA. It does nothing to restrict the Secretary's discretion to place limitations on a tribe's investments and enforce those limitations. Further, contrary to Plaintiff's assertion, HUD is not "recaptur[ing] grant funds" in violation of section 401, *Opposition,* p. 6, through 24 C.F.R. § 1000.58(g) and PIH Notice 2009-6, section 7(c). After a two-year investment, a recipient's grant funds may be spent or deposited in the Treasury where they remain available to the recipient for use on eligible program activities. A recipient's grant amount or access to grant funds is not impaired by the two-year limitation. *See* PIH Notice 2009-6, section 7(c). Moreover, interest income earned on investments beyond two-years does not fall within section 401 because it is not grant money.

Sixth, as discussed in more detail, *infra,* income earned from investments beyond two years is not program income. Thus, the fact that 25 U.S.C. § 4114(a) and 24 C.F.R. § 1000.62(b), permit a tribe to retain program income is irrelevant to whether the Secretary abused his discretion under section 204(b) by requiring tribes to return non-program income earned on unauthorized investments.

B. The *Ex Parte Young* Doctrine does Not Provide a Waiver of Sovereign Immunity over Plaintiff's Claims

*Ex Parte Young,* 209 U.S. 123, stands for the proposition that sovereign immunity does not bar prospective relief requiring government officials to obey the law. The rationale behind the *Ex Parte Young* doctrine provides, "where the officer's powers

are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions." *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689 (1949). "For a number of years, prospective relief against federal officials was available under the fiction of *Ex Parte Young.*" *EEOC v. Peabody W. Coal Co.y,* 610 F.3d 1070, 1085 (9th Cir. 2010) (citing *Larson,* 337 U.S. 682). "However, since 1976 federal courts have looked to §702 of the [APA] to serve the purposes of the *Ex Parte Young* fiction in suits against federal officers." *Peabody,* 610 F.3d at 1085; *see also Robbins v. U.S. Bureau of Land Mgmt.,* 438 F.3d 1074, 1081 (10th Cir. 2006) (amendments to 5 U.S.C. §702 largely superseded *Larson* in broadening judicial review of agency action); *The Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518 (9th Cir. 1989) ("Congress referred disapprovingly to the *Ex Parte Young* fiction, which permitted a plaintiff to name a government official as the defendant in equitable actions to redress government misconduct, on the pretense that the suit was not actually against the government."). Accordingly, the Court finds the *Ex Parte Young* doctrine does not offer a waiver of sovereign immunity in the instant case. *See Peabody,* 610 F.3d at 1085; *Robbins,* 438 F.3d at 1081.

Moreover, even if the *Ex Parte Young* doctrine could conceivably provide a waiver of sovereign immunity despite the APA, the Court finds that such a waiver would be unavailable here because Congress delegated to the Secretary authority to regulate income-producing grant investments. Under the *Ex Parte Young* doctrine, "relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power." *Larson,* 337 U.S. at 690. Here, the Secretary does not lack authority such that *Ex Parte Young* applies because Congress explicitly granted the

Secretary authority to determine authorized investments. *See infra,* p. 2; *Opening Brief,* p. 7-11.

II. Even if there was a Waiver of the United States' Sovereign Immunity, Plaintiff's Challenge to 24 C.F.R. § 1000.58 and Notice PIH 2009-6, section 7(c), Fails to State a Claim on Which Relief can be Granted.

Defendants further assert that, even if judicial review is available, Plaintiff's challenge to 24 C.F.R. § 1000.58(g) and Notice PIH 2009-6, section 7(c), should still be dismissed because it fails to state a claim on which relief can be granted. In support of this contention, Defendants assert the two-year limitation on investments in 24 C.F.R. § 1000.58(g), and the requirement in Notice PIH 2009-6, section 7(c), are permissible constructions of NAHASDA, and in no way conflict with any of NAHASDA's provisions. Defendants further assert a finding that Congress intended to prohibit HUD from limiting tribes' investment activity to two-years or requiring that tribes return income from *ultra vires* investments would be contrary to NAHASDA's text, purpose, and legislative history. Finally, Defendants contend that PIH Notice 2009-6, section 7(c), does not violate notice and comment procedures.

Plaintiff does not explain in its Opposition why the challenged two-year limitation on investments in 24 C.F.R. § 1000.58(g) is an impermissible construction of NAHASDA or otherwise invalid. Instead, Plaintiff challenges only the requirement in PIH Notice 2009-6, section 7(c), that tribes return income earned on investments beyond two years. Specifically, Plaintiff asserts that the PIH Notice 2009-6, section 7(c), is contrary to section 104 of NAHASDA. Plaintiff contends section 104 of NAHASDA, which reflects Congress' intent that tribes be able to retain program income, is contrary to statements made during negotiated rulemaking. Plaintiff further asserts that PIH Notice 2009-6,

section 7(c), is invalid because it was issued several years after HUD promulgated 24 C.F.R. § 1000.58(g), which contains no requirement that a tribe return interest earned on investments beyond two years. Finally, Plaintiff contends that Notice PIH 2009-6 violates the APA's notice and comment procedures.

As discussed in more detail *infra*, the Court finds (1) that NAHASDA grants HUD authority to place the challenged two-year limitation on a  grant recipient's investment authority; (2) that the two-year limitation on a grant recipient's investment activity in 24 C.F.R. § 1000.58(g), and requirement in PIH Notice 2009-6, section 7(c), that tribes return income earned on investments beyond two years are permissible constructions of NAHASDA, and fully consistent with its provisions; and (3) that PIH Notice 2009-6, section 7(c), does not violate notice and comment procedures.   Accordingly, even if there was a waiver of sovereign immunity over Plaintiff's claims, the Court dismisses Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6), because Plaintiff has failed to state a claim on which relief may be granted.

A.    NAHASDA Grants HUD Authority to Place the Challenged Two-Year Restriction on a Grant Recipient's Investment Activity

The Court finds that Congress granted HUD authority to place the challenged two-year limitation on a grant recipient's investment activity.   HUD is authorized to promulgate NAHASDA regulations generally through negotiated rulemaking.   25 U.S.C. § 4116.   Moreover, as previously discussed, *supra,* HUD has been granted explicit discretion to determine the parameters of permissible investment activity.   *Id.* § 4134(b).   The current NAHASDA regulations, including 24 C.F.R. § 1000.58(g), were developed through negotiated rulemaking.   *See* Final Rule, 63 F.R. 12333, 12334 (Mar. 12 1998).   In producing 24 C.F.R. § 1000.58(g), the rulemaking committee drew the

line between appropriate grant investments for housing activities, and improper investments for income generation, at two years. *See* Proposed Rule, 62 F.R. 35718, 35726 (July 2, 1997); Final Rule, 63 F.R. 12333, 12337-38 (Mar. 12 1998). Finally, Congress has implicitly approved the existing investment restrictions by amending NAHASDA seven times since the final rule was promulgated without altering the investment provisions in any way. *See* Pub L. No. 105-276, 112 Stat. 2461 (1998); Pub. L. No. 106-568, 114 Stat. 2868 (2000); Pub. L. No. 107-292, 116 Stat. 2053 (2002); Pub. L. No. 108-393, 118 Stat. 2246 (2004); Pub. L. No. 109-136, 119 Stat. 2643 (2005); Pub. L. No. 109-58, 119 Stat. 594 (2005); Pub. L. No. 110-411, 122 Stat. 4319 (2008).

B. <u>The Two-Year Limitation on Investment Activity is a Permissible Construction of NAHASDA</u>

The Court finds that 24 C.F.R. § 1000.58(g)'s two-year limitation on investment activity is a permissible construction of NAHASDA. Specifically, the Court finds that, contrary to allegations in Plaintiff's complaint,[2] *Complaint,* ¶ 17, the challenged-two year limitation on investment activity does not conflict with section 203(f) of NAHASDA.

*i.* HUD's interpretation of NAHASDA is entitled to deference

---

[2] Plaintiff's Opposition does not address the legality of the two-year limitation on investments.

Plaintiff's challenge to HUD's interpretation of NAHASDA, a statute that HUD administers, should be evaluated under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-45 (1984).[3]  The Court must first inquire whether "Congress has directly spoken to the precise question at issue." *Id.* at 842.  If Congress has spoken directly to the issue, that is the end of the matter – the Court must "give effect to the unambiguously expressed intent of Congress." *Id.* at 843.  If, however, the statute is silent or ambiguous, the Court must inquire "whether the agency's answer is based on a permissible construction of the statute." *Id.*  "When the agency decision is based upon its interpretation of a statute that it is charged with administering, a court's deference to the agency's determination is at its apex." *See United States v. Mead Corp.,* 533 U.S. 218, 226-27 (2001).  However, in cases involving Native Americans, "federal statutes are to be construed liberally in favor of Native Americans, with ambiguous provisions interpreted to their benefit." *Ramah Navajo Chapter v. Lujan,* 112 F.3d 1455, 1461 (10th Cir. 1997) (citing *Montana v. Blackfeet Tribe,* 471 U.S. 759 (1985)).

The Court finds that Congress has not "directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  The Court further finds that, under *Chevron* and *Blackfeet Tribe,* HUD's interpretation of NAHASDA is entitled to deference because HUD's construction is consistent with the statutory mission to benefit all Native

---

[3]
  Plaintiff's assertion that "it is inappropriate for HUD to request the Court to apply *Chevron* at the pleading stage," *Opposition,* p. 8, is incorrect.  Courts routinely apply *Chevron* deference to facial challenges to statutory construction.  *See, e.g., Sullivan v. Zebley,* 493 U.S. 521 (1990).  Moreover, Plaintiff's facial challenge requires no factual development beyond the allegations in the Complaint.

Americans equally. Plaintiff's construction, however, would deny benefits to the low-income Native American families NAHASDA is meant to serve by permitting federal housing grant amounts to be invested indefinitely and, accordingly, not used on housing.

> ## *ii.* 24 C.F.R. § 1000.58(g) does not conflict with section 203(f) of NAHASDA

The Court finds the two-year limitation on investment activity does not conflict with section 203(f) of NAHASDA, which provides that "[a]ny amount of a grant provided to an Indian tribe . . . for a fiscal year that is not used by the Indian tribe during that fiscal year may be used by the Indian tribe during any subsequent fiscal year," 25 U.S.C. § 4133(f)(2). *See Complaint* ¶ 17.

When a grant is carried over to a subsequent fiscal year, the money remains in the Treasury until needed for expenditure on affordable housing projects. *See* 24 C.F.R. §§ 85.20(b)(7), 85.21 (grant funds remain in the Treasury until just before a grantee needs to use them for a program purpose). Conversely, when a tribe invests its grant money, it withdraws grant amounts from the Treasury. When grants are drawn from the Treasury before they are needed for program activities – e.g., when they are invested for income generating purposes – the federal government loses the use of the money. Moreover, the grant amount, when invested for income generating purposes, is also augmented at the expense of the public fisc. An interpretation of section 203(f) which prohibits HUD from placing time restrictions on a grant recipient's use of grant funds for investment purposes fails to distinguish between money that remains in the Treasury until used on affordable housing activities, and grant money that is withdrawn in advance of its use on such activities. There is no support for a

finding that Congress, through section 203(f), intended to comingle grant money that remains in the Treasury, and grant money that is withdrawn.

The distinction between grant money that remains in the Treasury and grant money that is withdrawn is apparent in section 202(9), which was added to NAHASDA at the same time as section 203(f). *See* 25 U.S.C. § 4132(9). Section 202(9) of NAHASDA, restricts the purpose of the account to maintaining a reserve for payment of administrative and planning expenses as well as limiting the amount that can be deposited to "1/4 of the 5-year average of the annual amount used by a recipient for administration and planning . . ." *Id.* The limitations on reserve accounts enacted in section 202(9) further demonstrate that Congress intended these means of grant management to be treated differently: unrestricted with regard to carryover of amounts that remain in the Treasury until they are spent directly on program activities, but strictly limited when grant amounts are to be held in proprietary accounts for a period of time before they are needed for expenditure.

Additionally, while carryover of grant amounts permits a tribe to accumulate sufficient funds to expend on program activities, an investment can be used solely to augment a recipient's grant amount and to generate income. If the Court were to interpret NAHASDA to prohibit time limitations on investment of grant amounts, a recipient could choose not to expend grant amounts on affordable housing activities. Indeed, the recipient would have an incentive to hold the grant amount for the sole purpose of producing income. There is no indication Congress intended to permit recipients to augment unused annual grant amounts by unrestricted investment. There is nothing in either the statutory text, or the legislative history of NAHASDA, which

indicates Congress chose to authorize accumulation rather than augmentation of grant appropriations.

Moreover, the legislative history of section 203(f) demonstrates Congress was codifying current practice and intended to ensure recipients' ability to expend grants on meaningful construction projects, which often require obligations and expenditures over an extended time period. This is even more important in the case of small tribes with relatively small annual grants, which require the accumulation of grant amounts over multiple years. *See, e.g.* S. Rept. No. 110-238, 7 (2007) ("Under this new language, grant recipients would be allowed to carry over those funds, not committed for use or expended, for subsequent fiscal years. . . . Grant recipients requested this change *given the nature of construction projects, which are often completed in subsequent fiscal years.*" (emphasis added)). The NAHASDA legislative history does not support a finding that, in codifying this practice, Congress intended to overrule 24 C.F.R. § 1000.58(g)'s challenged two-year limitation on investments.

Finally, "[i]t is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is one intended by Congress." *Commodities Futures Trading Comm'n v. Schor,* 478 U.S. 833, 846 (1986); *see also Rosillo-Puga v. Holder,* 580 F.3d 1147, 1157 (10th Cir. 2009). Section 203(f) was passed *after* the Secretary promulgated 24 C.F.R. § 1000.58(g). Thus, the fact that Congress chose not to alter the statutory treatment of investments in section 204(b) when it adopted section 203(f) indicates congressional approval of 24 C.F.R. § 1000.58(g) as written.

C.    The Requirement that Recipients Return Income Earned on Investments
Beyond Two Years is an Entirely Permissible Construction of NAHASDA
and NAHASDA Regulations

The Court finds the requirement in Notice PIH 2009-6, section 7(c), that grant recipients return income earned on investments beyond two years is a permissible construction of NAHASDA and NAHASDA regulations.   Specifically, the Court finds Notice PIH 2009-6, section 7(c), does not conflict with section 104 of NAHASDA, or with any statement by the negotiated rulemaking committee.

i.    Income from unauthorized investment of grant amounts, such as
investments beyond two-years, is not "program income" and must
be returned to the federal government

The Court finds income from unauthorized investments, such as investments made in contravention of 24 C.F.R. § 1000.58(g), is not program income and must be returned to the federal government.   Accordingly, the Court finds the requirement that recipients return income earned on investments beyond two years does not conflict with section 104(a) of NAHASDA.

As a general matter, "interest earned by a grantee on funds advanced by the United States belongs to the United States rather than to the grantee and must be paid to the United States."   71 Comp. Gen. 387, 388 (1992) (citing 64 Comp. Gen. 96 (1984); 42 Comp. Gen. 289 (1962)); *see also* U.S. GOVERNMENT ACCOUNTABILITY OFFICE, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW 10-79 (3d ed., Feb. 2006) ("GAO Redbook").   "Once grant funds have been applied to authorized grant purposes, . . . the income earned on the funds is called 'program' or 'grant-related' income and, in contrast with income earned on grant advances, may generally be retained by the grantee for grant-related uses."   71 Comp. Gen. 387, 388 (citing 44 Comp. Gen. 87 (1964)).

However, "any interest earned on grant funds when *those funds are not used for authorized grant purposes* must be considered interest earned on grant advances, and hence, belongs to the United States." *Id.* (emphasis added). In light of 24 C.F.R. § 1000.58(g), investment of grant amounts beyond two years is an unauthorized use of grant funds. This Court cannot reasonably construe interest earned on such unauthorized use of grant funds as program income. Accordingly, such interest income must be returned to the federal government.

   ii.   Investment income does not fall within section 104 because it is not earned after the initial disbursement of the grant amount received

Even if program income under section 104(a) included income realized from investments after two-years, the Court finds that section 104 still does not conflict with the challenged two-year limitation on investments. Section 104(a) only requires that a recipient be entitled to retain program income that "was realized *after the initial disbursement* of the grant amount received. . . ." 25 U.S.C. § 4114(a)(1)(A) (emphasis added). An investment is not an initial disbursement of the grant amount received because investments are made prior to expenditure on a housing activity. *See* U.S. GOVERNMENT ACCOUNTABILITY OFFICE, A GLOSSARY OF TERMS USED IN THE FEDERAL BUDGET PROCESS 45 (September 2005) (defining a disbursement as an amount paid to liquidate an obligation). Because investments are made prior to expenditure on a housing activity, this Court cannot reasonably construe an investment as an initial disbursement of the grant amount received. Using grant amounts for affordable housing activities fits within this definition because grant funds are being disbursed for affordable housing activities. Using grant amounts for investment purposes, however,

does not fit within this definition. Investing grant amounts does nothing to discharge a recipient's obligations tied to affordable housing activities.

> *iii.* HUD's statement during negotiated rulemaking does not justify a finding that PIH Notice 2009-6 is invalid.

The Court further finds that HUD's statement during negotiated rulemaking recognizing "the right of the recipients to keep all interest income earned on grant amounts," 63 Fed. Reg. 12333, 12338 (Mar. 12 1998), does not support a finding that PIH Notice 2009-6, section 7(c), is invalid. In *Wisconsin v. City of New York,* 517 U.S. 1, 23 (1996), the Supreme Court explained that statements made by subordinates are irrelevant when determining the legality of final agency action. Moreover, it would be illogical to construe this statement to mean HUD intended to allow tribes to make unauthorized use of grants and retain the income. To do so would mean HUD intended both to permit tribes to reap financial benefits from the improper use of grant funds, and to disregard established principles of federal grant administration.

> iv. PIH Notice 2009-6, section 7(c) is Not Invalid because it was Issued Several Years after HUD Promulgated 24 C.F.R. § 1000.58(g)

Finally, the Court finds PIH Notice 2009-6, section 7(c), is not invalid on the ground that it was issued several years after HUD promulgated 24 C.F.R. § 1000.58(g). The Court is unaware of any authority that supports such a finding. Moreover, agencies routinely refine implementation of their regulations over time. The agency does not have to address every possible application of a regulation at its inception. *See Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 417 (1993); *Davila-Bardales v. INS,* 27 F.3d 1, 5 (1st Cir. 1994) ("agencies retain a substantial measure of freedom to refine, reformulate, and even reverse their precedents in the light of new insights and changed circumstances").

D.  **Notice PIH 2009-6, section 7(c), does Not Violate the APA's Notice and Comment Procedures**

The Court finds Notice PIH 2009-6, section 7(c), does not violate the APA's notice and comment procedures. Section 553 of the APA addresses how an agency must conduct rulemaking, and makes it clear that notice and comment procedures are not required for interpretative rules. 5 U.S.C. § 553(b)(A) ("Except when notice or hearing is required by statute, this subsection [requiring notice and comment] does not apply . . . to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice."). However, "[i]t is well-established that an agency may not escape notice and comment requirements . . . by labeling a major substantive legal addition to a rule a mere interpretation." *Appalachian Power Co. v. EPA,* 208 F.3d 1015, 1024 (D.C. Cir. 2000). The Court "must still look to whether the interpretation itself carries the force and effect of law, . . . or whether it spells out a duty fairly encompassed within the regulation that the interpretation purports to construe." *Id.* (internal quotations omitted); *see also Defenders of Wildlife v. EPA,* 415 F.3d 1121 (10th Cir. 2005).

Notice PIH 2009-6, section 7(c), makes no substantive change in recipients' legal duties regarding grant investments. 208 F.3d at 1024. Thus, the Court finds that this case does not present the type of situation contemplated in *Appalachian Power*. Moreover, Notice PIH 2009-6, section 7(c), simply reinforces the established and existing principle which requires a recipient to return income earned from unauthorized use of grant funds, also applies in the context of unauthorized investments of NAHASDA grant money.

Accordingly, Defendants' Motion to Dismiss is granted.

DATED this 2nd day of May, 2011.

James H. Payne
United States District Judge
Eastern District of Oklahoma